**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MAPLE MANOR REHABILITATION
CENTER, L.L.C,

           Plaintiff,

v.

CARE CHOICES, a Michigan corporation,
MARGUERITE LAHS, an individual, and
LYNN LAHS, an individual,

           Defendants.
_____ /

Case Number: 05-72786

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

**OPINION AND ORDER GRANTING DEFENDANT CARE CHOICES' MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendant Care Choices' Motion for Summary Judgment. The Court held a motion hearing on July 19, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant Care Choices' Motion for Summary Judgment.

**I.    FACTS**

Plaintiff Maple Manor Rehabilitation Center, L.L.C. ("Plaintiff") is a Michigan limited liability company, with its principal place of business in Michigan. (Compl. ¶ 1). Plaintiff provides its residents with twenty-four hour intensive nursing care, progressive physical therapy, physician services, care conferences, medical supplies, medications and pharmaceuticals, room and board, and three meals a day. (Pl.'s Resp. 2). Defendant Care Choices ("CC") is a health maintenance organization ("HMO") that provides health benefits pursuant to contractual

1

arrangement in an employer benefit plan.[1] (An. ¶ 2). CC provides medical benefits to General Motor's employees pursuant to the terms of an agreement with General Motors Employee Benefit Plan. (*Id*. at 10). Defendant Marguerite Lahs ("Lahs") was admitted to Plaintiff for sixty-five (65) days between May 2004 and August 2004. (Pl.'s Resp. ¶ 2). Plaintiff provided treatment to Lahs in May and July of 2004. (CC's Br. 4). After Lahs' treatment was complete, Plaintiff sent a bill to Medicare. (*Id*.). Medicare paid its portion of the bill and Plaintiff requested that Lahs or CC pay the remaining balance. (*Id*.).

CC denied Lahs' claim because Plaintiff was not an in-network provider. Further, CC did not pre-approve Plaintiff, and thus did not agree to reimburse Plaintiff as an out-of-network provider. The CC Subscriber Certificate and Riders under "Covered Services - General" provides:

> **Requirements for Covered Services**
>
> Services covered by HMO must be:
>
> (1) Provided by the PCP or arranged by the PCP or Participating Specialist and **approved in advance** by HMO, and
>
> . . . .
>
> (5) Provided by a HMO Participating Provider, except in emergencies.

(CC Br. Ex. B, Subscriber Certificate and Riders § 5.2) (emphasis added). Plaintiff and Lahs were allegedly unaware of the pre-authorization requirement. (Pl.'s Resp. 2). Following CC's decision to deny Lahs' claim, Lahs did not appeal, pursuant to the process described in the

---

[1] Plaintiff does not state in its Complaint in which state CC is incorporated, nor does Plaintiff state CC's principal place of business.

subscriber agreement.[2]  (CC's Br. 4).

Medicare certified that Lahs' treatment was medically necessary.  (*Id*.).  As the primary insurance payor, Medicare fully paid its portions of the claim.  Plaintiff alleges that CC is the secondary insurance payor.  Plaintiff contends that CC refuses to pay for its portion of Lahs claim.

Plaintiff filed a four (4) count Complaint in 29th District Court in Wayne County, Michigan, alleging Breach of Contract, Unjust Enrichment, and Tortious Interference.  (*See generally*, Compl.).  The summons and Complaint were served upon CC on June 23, 2005. (Notice of Removal ¶ 1).  On July 15, 2005, CC removed the case to U.S. District Court, alleging that the Court had federal question jurisdiction over the action because Plaintiff sought recovery of benefits under an Employee Benefit Plan. (*Id*. at ¶ 4).  CC filed the instant Motion for Summary Judgment on May 9, 2006.  Plaintiff replied on June 29, 2006.  Plaintiff requests judgment in the amount of $7,117.50.  (Pl.'s Resp. 4).

CC argues that: (1) Plaintiff's state law contract complaints are preempted and Plaintiff's Complaint fails to state a cause of action; (2) Plaintiff has no standing to bring an ERISA claim; (3) Plaintiff's rights are limited to those of Lahs, and Lahs failed to exhaust her administrative remedies, thus leaving her and Plaintiff unable to proceed; (4) Plaintiff did not obtain pre-approval and has no contractual arrangement with CC; and (5) Plaintiff's state law claims fail on the merits.

In Plaintiff's limited Response, it argues that exhaustion of administrative remedies was

---

[2] CC does not provide section 7.5 of the Subscriber Certificate, which it claims outlines the grievance procedure.

futile because pre-authorization was not obtained and any administrative appeal would have been denied. Plaintiff avers that its failure to obtained pre-authorization constitutes an immaterial breach which should not relieve CC's responsibility for payment of the claim.

## III.     ANALYSIS

### A.     Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986).  Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Discussion**

        1.     Preemption

Defendant CC first argues that Employee Benefits Plans are an exclusive matter of federal concern and subject to Federal law.  It is upon this basis that CC removed the action to Federal court.  Defendant contends that Plaintiff has pled only state law theories of recovery and failed to allege that benefits were improperly denied under the Employee Benefits Plan governed by the Employee Retirement Income Security Act ("ERISA").  Thus, Defendant argues that

Plaintiff's state claims are preempted.  Plaintiff did not respond to this argument.

"[S]tate claims are preempted and therefore removable to federal court only when there is a 'clearly manifested' intent by Congress."  *Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 342 (6th Cir. 1989) (citations omitted).  "[C]omplete preemption exists when 'the pre-emptive force' of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal clam for purposes of the well-pleaded complaint rule.'"  *Id*. (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) and *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)).  "[T]he only instances in which the Supreme Court has found complete preemption have been (1) in relation to section 301 of the Labor Management Relations Act of 1947; (2) concerning the Employee Retirement Income Security Act; and (3) concerning Indian rights."  *Id*.  The preemption clause of ERISA "establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA."  *FMC Corp., Holliday*, 498 U.S. 52, 58 (1990).

> The savings clause returns to the State the power to enforce those state laws that 'regulate insurance,' except as provided in the deemer clause.  Under the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts.

*Id*.  ERISA's preemption provision, 29 U.S.C. § 1144, "states that the ERISA remedial scheme 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by the statute."  *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006) (citations omitted).

The Court finds that Counts I – IV implicate ERISA benefits.  The health plan under which Plaintiff seeks recovery is General Motors' employee health care program.  "General

6

Motors' ERISA plan contracts with [CC] to provide fully underwritten coverage to GM employees who choose to enroll with [CC]." (CC's Br. Ex. E, Coffield Aff. ¶ 6). Plaintiff's allegations stem from its belief that it should be paid as a result of Lahs' HMO coverage with CC, that CC failed to perform its obligations under the General Motors Employee Benefit Plan, and that CC received a windfall benefit of insurance premiums and coverage for its insured.

      The Court agrees that all of counts in Plaintiff's Complaint are preempted by ERISA. Since "virtually all state law claims relating to an employee benefit plan are preempted by ERISA," *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991), and all of Plaintiff's claims involve General Motors employee health care program, Plaintiff's state law claims involve ERISA and are thus completely preempted. Therefore, the preemptive force of the statute converts the common law complaint into one stating a federal claim. Accordingly, the Court rejects Defendant's contention that it is entitled to judgment on Plaintiff's claims because of ERISA preemption. Plaintiff's claim is properly before this Court.

      2.    Standing

    Next, Defendant argues that even though Plaintiff's claim is properly before this Court, Plaintiff has no standing to bring an ERISA claim. According to ERISA:

> A civil action may be brought –
>
> (1)    by a participant or beneficiary –
> . . . .
>     (B)    to recover benefits due to him under the terms of his plan . . .
> . . . .
> (3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a). A "participant" is an employee or former employee who is eligible to

receive any kind of benefit from an employee benefit plan which covers that employee. 29 U.S.C. 1002(7). A "beneficiary," as defined in ERISA, is a person designated by a participant, or by the employee benefit plan terms, who is entitled to a benefit. 29 U.S.C. 1002(8). Thus, only "participants" or "beneficiaries" of an employee benefit plan have standing to sue under § 1132(a)(1). *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947 (6th Cir. 1990). The Court finds that Plaintiff is neither a participant nor a beneficiary pursuant to ERISA.

However, the statutory list of persons entitled to sue under ERISA is not exclusive. In the Sixth Circuit, there is a narrow exception which gives a medical provider standing to "bring a civil action under ERISA to enforce the terms of an ERISA plan if it has received a valid assignment of benefits from the beneficiary or participant of the medical plan." *Tendercare v. Dana Corp.*, 2002 WL 31545992, *3 (E.D. Mich. Oct. 18, 2002) (unpublished) (citing *Cromwell*, 944 F.2d at 1277). An assignment is necessary for this exception to apply, and Defendant argues that Lahs never assigned Plaintiff as a beneficiary. At the July 19, 2006 motion hearing, Plaintiff presented to the Court evidence of the assignment of the claim. The assignment, signed by Verl Lahs for the Estate of Marguerite Lahs, states: "I hereby assign all claims and the right of any insurance recovery from Care Choices for the medical services of Marguerite Lahs to Maple Manor Rehabilitation Center." (Assignment, June 27, 2006). Therefore, the Court finds that Plaintiff has standing to assert an ERISA claim against CC as a result of Lahs' assignment.

   3.  Exhaustion of Benefits

CC argues that Plaintiff's rights are limited to Lahs' rights at the time of the assignment, as stated in the HMO Subscriber Agreement. CC contends that Lahs failed to appeal her August

2004 denial of benefits decision and thus failed to exhaust her benefits. Consequently, CC claims its HMO requirements were ignored and that Lahs breached her responsibilities.

Plaintiff argues that an appeal was futile because pre-authorization was not obtained. Plaintiff avers that the Court can use its discretion in this case to excuse non-exhaustion because the plan's administrative procedures were futile.

CC replies that it is uncontested that Lahs failed to comply with preauthorization. CC asserts that Plaintiff's non-exhaustion should not be excused because Plaintiff's actions (e.g., her failure to appeal) caused the futility, not CC's actions.

An assignment is a "separate agreement between the assignor and assignee which . . . transfers the assignor's contract rights. . . . [T]he assignee simply moves into the shoes of the assignor." *Managed Health Care Assocs. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000); *see also Trust Co. v. National Bank*, 101 U.S. 68, 71 (1880) ("An assignee stands in the place of his assignor, and takes simply an assignor's rights.").

ERISA does not state whether exhaustion of administrative remedies is required before bringing a civil action. *Fallick v. Nationwide Mutl Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). "However, due to ERISA's provision for the administrative review of benefits, [the Sixth Circuit has] read an exhaustion of administrative remedies requirement into the statute." *Id*; *see Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991) ("The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court."). The purpose of exhausting administrative remedies is to minimize the amount of frivolous ERISA suits, to promote the consistent treatment of claims, to limit the cost and time of settlement, and to provide a dispute resolution process that is not adversarial.

*Saravolatz v. AETNA*, 51 F. Supp. 2d 806, 810 (E.D. Mich. 1999).

However, "a court is obliged to exercise its discretion to excuse non-exhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick*, 162 F.3d at 419. "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id*. The futility exception, though, is only applied when resorting to administrative remedies is clearly useless. *Saravolatz*, 51 F. Supp. 2d at 810 (internal citation omitted).

In the instant case, the Court finds that it was futile for Plaintiff to appeal Defendant's decision. Defendant had informed Lahs in writing on August 6, 2004 that it was unable to authorize payment for the service requested because the provider was out-of-network. (CC's Br. Ex. C, CC letter). Cited in the letter was CC's "Requirements for Covered Services" provision which stated an out-of-network provider needed to be approved in advance. The letter indicates that any appeal filed by Lahs would be useless. Accordingly, the Court finds that Lahs' failure to exhaust her administrative remedies is not a bar to Plaintiff's claims.

         4.        Arbitrary and Capricious Standard

CC contends that its eligibility determinations should be reviewed with the arbitrary and capricious standard, and since it had a reasonable basis for the denial of Lahs' claim, its decision should be affirmed. Plaintiff did not respond to CC's arguments.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that an administrator's decision to deny benefits must be reviewed *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits. When the

10

plan administrator has discretionary authority to determine eligibility for benefits, "the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (internal citation omitted).  Benefit denials under ERISA plans are evaluated under the arbitrary and capricious standard.  *Miller*, 925 F.2d at 984 ("Because the express provisions of the [ERISA] Plan grant [the defendant] the discretionary authority described by the Supreme Court in *Bruch*, the district court correctly applied an 'arbitrary and capricious' standard when reviewing [the defendant's] termination of benefits.").

However, the arbitrary and capricious standard of review is not "without some teeth." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

> 'Deferential review is not no review,' and 'deference need not be abject.' [The court has] an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations. This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.  Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision[,] as long as the plan was able to find a single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits.

*Id*.  (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

A plan does not need to use the words "discretionary authority" to constitute a clear grant of discretion to the plan administrator.  *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  A plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Finance Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989).  The arbitrary and capricious standard is the least demanding form of judicial review of an administrative action.

11

*Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2005).

According to the Subscriber Agreement, CC retained the sole authority to make all necessary determinations "that are required for the administration of [the] Certificate and the Contract[,] including determinations regarding Medical Necessity and Covered Services." (CC's Br. Ex. B, Subscriber Agreement 1). CC also has the sole authority to make findings of fact "and to construe and interpret the Contract whenever necessary to carry out its intent and purpose[,] and to facilitate its administration." (*Id*.). Additionally, two sections of the Subscriber Agreement state that prior approval is needed in order for CC to cover work performed by an out-of-network provider. As mentioned above, section 5.2 states that all services covered by CC must be provided by the primary care physician or approved in advance by the HMO. (CC Br. Ex. B, Subscriber Certificate and Riders § 5.2). Additionally, section 5.13, which covers Skilled Nursing Facilities states:

> Subject to the limitations and exclusion in the Certificate and applicable Riders, HMO covers skilled care (care that can be provided only by our under the supervision of a licensed professional) in a skilled nursing facility when **approved in advance** by HMO. Please check the attached Schedule of Benefits for the number of days covered.
>
> Skilled nursing facility care is limited to the number of days per occurrence requiring facility care specified in the attached Schedule of Benefits and renews only after sixty (60) days of continuous non-confinement, i.e., the benefit renews only after the Member has not been confined to a hospital or skilled nursing facility for sixty (60) consecutive days.

(CC Br. Ex. B, Subscriber Certificate and Riders § 5.13) (emphasis added). Based on the procedures set forth in the Subscriber Certificate, Defendant made a determination that the care Lahs received was available within the HMO network, and a referral or pre-treatment request for out-of-network care was not made.

The Court finds that CC's determination has a rational basis. Therefore, the Court finds that Defendant did not act arbitrarily and capriciously in denying Plaintiff's requested benefits.[3]

**III.    CONCLUSION**

For the reasons stated, the Court GRANTS Defendant Care Choices' Motion for Summary Judgment.

**SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 28, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 28, 2006.

s/Denise Goodine
Case Manager

---

[3] CC also argues that Plaintiff's state law claims fail on the merits. However, because the Court finds that Plaintiff's state law claims are preempted by ERISA, the Court did not address this issue.